# EXHIBIT A

CONTRACT NO. <u>7165-MSA</u>
(Job#OM0925.100)

## MASTER SERVICE CONTRACT

THIS Master Service Contract ("Contract"), effective as of the <u>25th</u> day of <u>March</u>, 2014 by and between Truston Technologies, Inc. herein referred to as "Company" and <u>Healy-Tibbitts Builders</u> herein referred to as "Contractor";

WITNESSETH, that:

For and in consideration of the mutual covenants and agreements herein contained and of the payments, which may be made by Company to Contractor (sometimes referred to hereafter individually as a "Party" or together as the "Parties") pursuant to the provisions hereof, the Parties hereto mutually agree as follows:

### I. WORK OR SERVICES COVERED

A. This Contract is for any operations requested by Company.

B. It is contemplated that, from time to time during the term of this Contract, Company may request, either orally or in writing, that Contractor perform work or render services for the benefit or account of Company. In the event that Contractor agrees to undertake the performance of such work or services for Company, then, in each instance, the designation of work to be performed and the consideration to be paid by Company to Contractor shall be as agreed by the parties in writing and incorporated herein by reference; provided, however, that: (i) the provisions of this Contract shall govern and be fully applicable to the performance of all such work or services and the relationship of the parties relating to or arising out of the performance of such work and services shall be controlled and regulated hereby; and (ii) in the event of a dispute or conflict between this Contract and any writing (including, without limitation), any work order, work ticket, manifest, or other writing between the parties entered into or executed subsequent to the date first set forth above, this Contract shall govern in all instances. However, any work or services provided by Contractor to Company shall be governed by this Contract even if no such writing is generated. This Contract shall become effective on the date executed and shall supersede all prior service contracts between the parties hereto, and control over any subsequent agreement (including any purchase order, requisition, or other agreement), unless there is a specific amendment to this Contract under a separate written agreement that specifically references this Contract, that states an intent to amend this Contract, and that is executed by authorized representatives of both Company and Contractor.

C. The words "work" and "services", as used herein, contemplate any business activity of Contractor which requires that its employees, servants, agents or representatives or the employees, servants, agents or representatives of its subcontractor(s), enter upon or utilize any property or premises owned (in whole or in part), leased, chartered or operated by Company or which requires that Contractor, or its subcontractor, construct, install, recondition, maintain or repair, for the benefit of Company, any property owned (in whole or in part), leased, chartered, or operated by Company, and such term shall include any products, goods, materials, supplies, or equipment provided in connection with or as a part of such work or services.

D. This Contract does not obligate Company to order or request any work or services from Contractor, nor does it obligate Contractor to accept orders or request for work or services from Company.

Page 1

## II. MANNER OF PERFORMANCE OF WORK OR SERVICES

A. All work or services contemplated by this Contract shall be performed or rendered by Contractor with due diligence and in a good, workmanlike and timely manner, all in accordance with the specifications or requirements of Company.

B. Contractor warrants that it shall have in place, and its employees shall adhere to, a comprehensive Health, Safety, and Environment program and that Contractor will be responsible for providing its employees and subcontractors with a safe and healthful workplace. Contractor further agrees that it and its employees, subcontractors, agents, and representatives shall be familiar with and comply with any posted safety or other rules.

C. Contractor warrants that it shall have in place and comply with a comprehensive Drug Testing and Substance Abuse Program, which complies with DOT regulations if applicable. ~~In addition, Contractor agrees to comply with any applicable Company drug testing or substance abuse policy, and to obtain the consent of its employees to any such policy.~~ Further, Contractor agrees to Release, defend, indemnify and hold harmless Company Group (as defined in Paragraph VI.A(ii)) for any claims by any employees of Contractor or its subcontractors in any way arising, directly or indirectly, in connection with the provisions of any drug testing or substance abuse policy or its implementation, and the Release, defend, indemnify and hold harmless obligations contained in this paragraph shall apply even if the claims are contributed to or caused by the sole, joint, concurrent, active or passive negligence, fault, or strict liability of Company Group.

D. Damage to other work – In carrying out the Work, Contractor shall take necessary precautions to protect the finished work of other trades from damage caused by its operations and Contractor shall repair and/or replace to the Company's satisfaction and on Company's demand all damage caused by Contractor's operation at no expense to the Company.

## III. INDEPENDENT CONTRACTOR RELATIONSHIP

It is expressly understood that Contractor shall perform work or services as an independent contractor. Company shall exercise no control over the Contractor's employees, servants, agents or representatives, nor those of its subcontractor(s), nor the methods or means employed by Contractor in the performance of such work or services, Company being solely interested in the attainment of the desired results. Company will not be vicariously responsible for any acts of Contractor's or subcontractor's employees.

## IV. LAWS, REGULATIONS AND EXECUTIVE ORDERS

A. In connection with the performance of work and services contemplated by this Contract, Contractor agrees to comply with all laws, rules, and regulations, Federal, State, County and Municipal, which are now, or in the future may be, applicable to its business, equipment and employees engaged in, or in any manner connected with, Contractor's performance of work or services for Company, including, without limitation, those set forth on Exhibits "A" and "B" attached hereto.

B. Contractor shall, at its sole expense, defend, protect, indemnify and hold harmless Company Group (as defined in Paragraph VI.A(ii)) against any and all claims, demands, investigations and causes of action of every kind or character filed or made by any employee, servant, agent or representative of Contractor alleging any violation by Contractor or Company of the above referenced laws, regulations or executive

Page 2

orders.

## V. INSURANCE REQUIRED

A. Contractor agrees to, at its sole expense, procure and maintain the policies of insurance, as set forth in Exhibit C, during the entire term of this Contract.

B. Prior to the commencement of any work or services contemplated by this Contract, Contractor shall furnish insurance certificates to Company, of a form acceptable to Company, signed by an authorized representative of the insurance companies providing the coverage, evidencing all coverages, extensions and limits required to be carried by Contractor under the provisions of this Contract. No work or services shall be commenced, or monies owed, unless said certificates are on file with Company, provided that neither Company's acceptance of an incomplete or improper certificate, nor commencement of work or services or payment for any work or services hereunder, shall constitute a waiver of any rights of Company. Upon request, Company shall have the right to examine or inspect the originals or certified copies of said insurance policies in the offices of Contractor during its normal business hours.

C. All insurance policies of Contractor in any way related to the work or services, whether or not required by this Contract, shall, with respect to liabilities assumed by Contractor, name Company Group as additional insured (except for Workmen's Compensation coverage), and be primary with respect to any other coverage in favor of Company Group.

D. Failure to secure the insurance coverages, or the failure to comply fully with any of the insurance provisions of this Contract, shall in no way act to relieve Contractor from the obligations of this Contract, any provisions hereto to the contrary notwithstanding. In the event that liability for any loss or damage be denied by the underwriter or underwriters, in all or in part, because of breach of said insurance by Contractor, or for any other reason, or if Contractor fails to maintain any of the insurance herein required, Contractor shall, at its sole expense, hold harmless, defend and indemnify the Company Group (as defined in Paragraph VI.A(ii)), from and against all claims, demands, costs and expenses, including attorney's fees, which would otherwise be covered by said insurance. Unless expressly stipulated to the contrary herein, Contractor's indemnification obligations under this Contract (express or implied) shall not be limited in amount or in scope to any coverage provided by Contractor's insurance.

## VI. INDEMNIFICATION

A. For the purpose of this Article VI and this entire Contract, the following definitions shall apply:

(i) "Contractor Group" shall mean (individually and collectively): (i) Contractor, its parent, subsidiary and affiliated or related companies (including any limited liability companies or partnerships), (ii) its and their working interest owners, co-lessees, co-owners, partners, members, co-ventures, joint operators, and joint ventures, if any, and their respective parents, subsidiary and affiliated or related companies (including any limited liability companies or partnerships), (iii) its and their subcontractors, and (iv) the officers, directors, employees, agents, assigns, representatives, managers, consultants and invitees and insurers of all of the foregoing.

(ii) "Company Group" shall mean (individually and collectively): (i) Company, its parent, subsidiary and affiliated or related companies (including any limited liability companies or partnerships), (ii) its and their working interest owners, co-lessees, co-owners, partners, members, co-ventures, joint operators, joint ventures, and their respective parents, subsidiary and affiliated or related

Page 3

companies (including any limited liability companies or partnerships), (iii) Company's other contractors and subcontractors (excluding Contractor Group), and (iv) the officers, directors, employees, agents, consultants and invitees and insurers of all of the foregoing.

(iii) "Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees, and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Contract (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

(iv) The term "subcontractors" shall mean subcontractors of every tier.

B. Contractor shall release, indemnify, defend and hold Company Group harmless from and against any and all Claims brought by Contractor Group (or any of their heirs, spouses, dependents, estates, or other relatives) with respect to (a) personal or bodily injury to, sickness, disease or death of any member of Contractor Group, or for (b) any damage to or loss of or destruction of real or personal property owned, leased, rented or hired by any member of Contractor Group. The indemnity obligations set forth in this provision shall include any Claims arising out of ingress, egress, loading, or unloading of personnel or cargo or arising out of any presence on any premises or vessel or other mode of transportation, and shall also include any medical, compensation or other benefits paid by Company or any member of Company Group in connection with employees of Contractor (or Contractor Group).

C. Company shall release, indemnify, defend and hold Contractor Group harmless from and against any and all Claims brought by Company Group or its employees (or any of their heirs, spouses, dependents, estates, or other relatives) with respect to (a) personal or bodily injury to, sickness, disease or death of any member of Company Group, or for (b) any damage to or loss or destruction of real or personal property owned, leased, rented or hired by any member of Company Group.

D. In support of the mutual indemnity obligations each Party assumes in this Contract, each Party, as indemnitor, agrees, at its own cost, to obtain and maintain, for the benefit of the other Party (and its respective Group) as indemnitees, liability insurance or qualified self-insurance with minimum limits not less than minimum coverage in Exhibit C.

E. Notwithstanding anything contained in this Contract to the contrary, neither Party shall be liable to the other Party for, and each Party hereby releases the other Party from, any of its own indirect, special, punitive, exemplary or consequential damages or losses including, but not limited to, damages or losses for lost production, lost revenue, lost product, loss profits, lost business or business interruptions.

F. Unless otherwise set forth herein, the exclusions of liability, releases and indemnities set forth in this contract shall apply to any claim(s) without regard to the clause(s) thereof including, without limitation, pre-existing conditions, whether such conditions be patent or latent, the unseaworthiness of any vessel or vessels, imperfection of material, defect or failure of equipment, breach of representation or warranty (expressed or implied), strict liability, tort, breach of contract, breach of statutory duty, breach of any safety requirement or regulation, or the negligence of any persons or party, including the indemnified party or other indemnitees, whether such negligence be sole, joint and/or concurrent, active or passive or any other theory of legal liability and except as otherwise prohibited by statute or law, without regard to insurance carried by any party.

G. In the event any claims or suits are made or filed, if the indemnitor does not accept the defense and indemnity of the indemnitee without qualification, the indemnitee hereunder shall have the right to select

counsel of its own choosing and defend itself, and such costs of defense shall be recoverable from the indemnitor if it is determined that defense and indemnity should have been provided. With respect to claims against an indemnitee by the indemnitor's employees, indemnitor agrees to expressly waive any immunity under applicable workers' compensation laws, that would bar or affect the enforcement of this provision of this Contract by indemnitee against indemnitor.

H. Contractor shall, at its sole expense, defend, protect, indemnify and hold the Company harmless against claims, suits, and damages for infringement of any patent or trademark growing out of or incident to Contractor's performance of the work or services, or any legal proceedings brought against Company or Contractor claiming infringement of a patent or trademark based upon the performance by Contractor.

## VII. FIDELITY

Neither Contractor nor any of its subcontractors performing work or services hereunder shall pay any commissions or fees or grant any rebates or other remuneration or gratuity to any employee, director, agent or representative of the Company. Nor shall Contractor or any of its subcontractors grant any secret rebates, one to the other, nor pay any commissions or fees to the employees or officers of the other.

## VIII. TERM

This Contract shall have a term of one (1) year from and after the date hereof. It is understood and agreed, however, that either Party hereto may terminate this Contract at any time, whether during the initial term or otherwise, by giving the other party at least thirty (30) days' prior written notice of such termination. Such termination shall not affect any pending work or services being performed for Company unless Company, in its sole discretion, decides to terminate such work or services. In addition, notwithstanding the foregoing provisions, Company may, in its sole discretion, terminate any particular request for work or services, at any time, upon written notice.

However, if the Contract is terminated, the indemnification provisions set forth in this Contract (and any other provisions which so provide or which by their nature are intended to survive termination) shall survive the termination of this Contract.

## IX. COMMISSIONS, CONVERSION FEE, ETC.

Both parties agree there shall be no additional commissions or conversion fees beyond Company's payment to Contractor of the consideration as set forth in Paragraph I hereof.

## X. POLLUTION

In conducting its operations hereunder Contractor agrees to comply with all local, state and federal laws and regulations to protect the environment and to bear the costs and expenses thereof. Contractor agrees to immediately report to Company all details of every environmental upset or spillage and to fully cooperate in all clean up and reclamation activities by providing labor and equipment in order to restore and protect the environment. Clean up and reclamation activities by Company shall not relieve Contractor of its duties or liabilities under this Contract.

## XI. NOTICES

Any and all notices required to be given hereunder shall be deemed to have been properly given when delivered to the other or mailed to the party addressed, postage prepaid, at the addresses shown following their

signatures hereto. Either party may change its address shown by giving fifteen days advance written notice thereof to the other party.

## XII. ASSIGNMENT

Contractor may not alienate, transfer or assign any rights hereunder to any third party without the express written approval of Company. If written approval is so given, this Contract shall be binding upon the transferees, successors and assigns of the parties hereto, but Contractor shall not be relieved of its obligations under this Contract.

## XIII. AUTHORITY OF EXECUTING PARTIES

Each of the persons executing this Contract represents and warrants that he or she has full right and authority to execute this instrument on behalf of Company or Contractor, as the case may be, and to bind such party to the fulfillment of all of the provisions hereof.

## XIV. AUDIT PROVISION

Notwithstanding any provision of this Agreement to the contrary, nothing herein shall grant to the Buyer the right to examine or audit the financial books or records of the Seller, or the right to receive, inspect or examine any disclosure statement of the Seller, it being specifically understood and agreed that any such audit, examination or inspection shall only be conducted by authorized representatives of the Government in accordance with the provisions of this Agreement and applicable laws and regulations.

## XV. APPLICABLE LAW

A. It is agreed that this Agreement shall be governed by, construed, and enforced in accordance with the laws of the Commonwealth of Virginia without regard to any choice of law principles that could result in the application of the laws of any other jurisdiction other than the Commonwealth of Virginia.

B. The parties consent to venue and jurisdiction in the Circuit Court of the County of York, Virginia, and in the United States District Court for the Eastern District of Virginia, and to service of process under Virginia law, in any action commenced to enforce or interpret this Agreement.

## XVI. WAIVER OF LIEN

As a condition precedent to the Company making any Progress Payments, or Final Payment, Contractor shall submit with each application for payment on a form provided by the Company a partial or final lien waiver and release of claims applicable to that portion of the Work covered by the Application for Payment, other than those claims Contractor specifically identifies in writing as provided on the lien waiver. When requested by Company, and in a form required by Company, Contractor shall require as a condition precedent to payment to any Subtier Subcontractor, vendor, materialman, or any other party providing equipment, services, materials or labor to the Project on Contractor's behalf the execution of similar lien waivers and release of claims in favor of Company. When required by Company, Contractor's provision of these waivers and claim releases shall be a condition precedent to payment of Contractor for any work related to the waivers and releases.

## XV. MISCELLANEOUS

A. Except for the designation of the work or services to be performed and the consideration

provided for in Paragraph I, it is understood and agreed between the parties hereto that this Contract constitutes the sole and complete basis for the agreement between the parties and that no other representations of any kind, oral or otherwise, have been made to Contractor.

B. In the event one or more of the provisions contained in this Contract shall be held, for any reason, to be invalid, void, illegal, or unenforceable in any respect, such invalidity, void ness, illegality, or unenforceability shall not affect the remaining provisions hereof, any term or provision so held to be invalid, void, illegal, or unenforceable shall be deemed amended to the extent necessary to comply with such law, or if necessary such provisions shall be deemed deleted and this Contract shall remain unaffected and shall be construed as if such invalid, void, illegal, or unenforceable provision never had been contained herein.

C. The failure of either Party hereto at any time to require performance by the other Party of any provision of this Contract shall in no way effect the right of such Party thereafter to enforce the same, nor shall any waiver of any breach of any provision hereof by the other Party be taken or held to be a waiver by such Party of any succeeding breach of such provision, or as a waiver of the provision itself.

D. This Contract may be executed in multiple counterparts, each of which shall be considered an original once Company and Contractor have executed a counterpart of this Contract.

E. Additional provisions, if any, are attached hereto as Exhibit "F". The following exhibits are attached hereto and made a part hereof:

Exhibit "A" – Non-Discrimination Provisions
Exhibit "B" – Certificate of Nonsegregated Facilities
Exhibit "C" – Contractor Insurance Requirements

In WITNESS WHEREOF, the parties hereto have executed and delivered this Contract effective as of the date first hereinabove shown.

FOR
Healy-Tibbitts Builders

Signature: _____

Printed: RICHARD A HELTZEL

Title: PRESIDENT


FOR
Truston Technologies, Inc.

Signature: _____

Printed: Lesley Levicki

Title: Chief Financial Officer

Page 7

## EXHIBIT "A"

### EXECUTIVE ORDER NO, 11,246 - NONDISCRIMINATION IN EMPLOYMENT
### SECTION 202, PARAGRAPHS 1-7, INCLUSIVE

During the performance of this Contract, the CONTRACTOR agrees as follows:

(1) The CONTRACTOR will not discriminate against any employee or applicant for employment because of race, religion, color, sex or national origin. The CONTRACTOR will take affirmative action to ensure that applicants are employed, and the employees are treated during employment, without regard to their race, religion, color, sex or national origin. Such action shall include, but not be limited to the following employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination, rates of pay or other forms of compensation; and selection for training, including apprenticeship. The CONTRACTOR agrees to post inn conspicuous places available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

(2) The CONTRACTOR will in all solicitations or advertisements for employees placed by or on behalf of the CONTRACTOR, state that all qualified applicants will receive consideration for employment without regard to race, religion, color, sex, or national origin.

(3) The CONTRACTOR will send to each labor union or representative or workers with which was a collective bargaining agreement or other contract or understanding a notice to be provided by the agency contracting officer, advising the labor union or worker's representative of the CONTRACTOR'S commitments under Section 202 of the Executive Order 11,246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The CONTRACTOR will comply with all provisions of Executive Order 11,246 of September 24, 1965, and of the rules, regulation and relevant orders of the Secretary of Labor.

(5) The CONTRACTOR will furnish all information and reports required by Executive Order 11,246 of September 24, 1965, and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of labor for the purposes of investigation to ascertain compliance with such rules, regulations and orders.

(6) In the event of the CONTRACTOR'S noncompliance with the nondiscrimination clauses of this Contract or with any of such rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and the CONTRACTOR may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11,246 of September 24, 1965, and such other sanctions may he imposed and remedies invoked as provided in Executive Order 11,246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(7) The CONTRACTOR will include the provisions of paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24,1965, so that such provisions will be binding upon each subcontractor or vendor. The CONTRACTOR will take such action with respect to any subcontract or purchase order as the contracting agency direct as a means of enforcing such provisions including sanctions for noncompliance: provided, however, that in the event that CONTRACTOR becomes involved in, or is threatened with, litigation with a subcontract or vendor as a result of such direction by the contracting agency, the CONTRACTOR may request the United States to enter into such litigation to protect the interests of the United States.

(8) CONTRACTOR acknowledges that it may be required to file Standard Form 100 (EEO-1) promulgated jointly by the Office of Federal Contract Compliance, the Equal Employment Opportunity Commission, and Plans for Progress with Joint Reporting Committee, Federal Depot, Jeffersonville, Indiana, within thirty (30) days of the date of contract award if such report has not been filled for the current year and otherwise comply with or file such other compliance reports as may be required under Executive Order 11,246, as amended.

(9) CONTRACTOR further acknowledges that it may be required to develop a written affirmative action compliance program as required by the Rules and Regulations approved by the Secretary of Labor under authority of Executive Order 11,246 and supply the other party hereto with a copy of such program if such party so requests.

(10) The provisions hereof are subject to the exemptions, qualifications and limitations contained in and which CONTRACTOR may claim under 41 CFR Chapter 60, and such provisions are qualified to the extent and so that CONTRACTOR shall have the full benefit thereof. The terms used herein shall have the meanings specified in 41 CFR Section 1-12,802.

## EXHIBIT "B"

## CERTIFICATE OF NONSEGREGATED FACILITIES

Each of the parties to the Contract to which this Certificate is attached as an Exhibit do hereby assure the other (the "assured") that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform their services at any location, under its control, where segregated facilities are maintained. For this purpose, it is understood that the phrase "segregated facilities" includes facilities which are in fact segregated on a basis of race, color, religion, or national origin, because of habit, local custom, or otherwise. It is further understood and agreed that maintaining or providing segregated facilities for its employees or permitting its employees to perform their services at any location under its control where segregated facilities are maintained is a violation of the equal opportunity clause enumerated by Executive Order No. 11,246 of September 24, 1965.

Each of the parties further understands and agrees that a breach of the assurance herein contained subjects to the provisions of the order at 41 CFR Chapter 60 of the Secretary of Labor dated May 21, 1968, and the provisions of the equal opportunity clause enumerated in contracts between the United States of America and the assured.

Whoever knowingly and willfully makes any false, fictitious, or fraudulent representation may be liable to criminal prosecution under 18 U.S.C. Par. 1001.

Each of the parties reserves to it the benefit of exemptions, qualification and limitations contained in and which it may claim under 41 CFR Chapter 60 and this certification is qualified to the extent and so that the undersigned shall have the full benefit thereof.

# EXHIBIT "C"

## CONTRACTOR INSURANCE REQUIREMENTS

Contractor shall name Truston Technologies, Inc. as an additional insured and certificate holder in a form acceptable to the Company with the following minimum coverages:

STANDARD MINIMUM REQUIREMENTS

(1) Worker's Compensation Insurance for its employees; in the amount required by law; (minimum $500,000),

(2) Comprehensive Automobile Personal Injury Liability and property damage insurance with combined single limit of $1,000,000; and

(3) General Liability, $1,000,000 per occurrence, $2,000,000 general aggregate to include: Additional Insured / Primary and Non-Contributory / Action over Indemnity. (No diving exclusions if a diving job.)

ADDITTIONAL REQUIREMENTS (Provide Insurance Certificate for Checked Items)

REQUIRED

☒ Maritime Employers Liability $1,000,000
    A. Diving Coverage  B. Crew Coverage

☒ U. S. Longshoremans & Harbor Workers Statutory

☒ Waiver of Subrogation on Workers Compensation & General Liability

☐ Alternate Employer Endorsement on Workers Compensation

☐ Alternate Employer Endorsement on Maritime Employers Liability

☒ Protection & Indemnity Liability with Crew $1,000,000

☐ Additional Workers Compensation $_____ ($_____ Total)

☐ Charterers Liability

☒ Vessel Owners Insurance:
    a. Hull-physical damage
    b. Protection & Indemnity (includes collision and towing)
    c. Vessel Pollution

Note: Additional requirements even if not indicated above, may be required for specific orders: such requirements will be incorporated into the purchase order.

# CERTIFICATE OF LIABILITY INSURANCE

ACORD

DATE (MM/DD/YY): 10/3/2014

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER**
FRENKEL & COMPANY
350 Hudson Street – 4th Floor
New York, NY 10014
Phone No. (212)-488-0200
Fax No. (212)-488-0421

**CONTACT NAME:** Joseph G. Valenza
**PHONE (A/C, No, Ext):** 212-488-1828
**FAX (A/C, No):** 212-488-0421
**E-MAIL ADDRESS:** jvalenza@frenkel.com
**PRODUCER CUSTOMER ID#:**

**INSURERS AFFORDING COVERAGE** | **NAIC #**
---|---
INSURER A: XL Specialty Ins. Co.-/Zurich American Ins. Co./NY Marine & General | 37885/16535/16608
INSURER B: Employers Insurance Company of Wausau | 21458
INSURER C: XL Specialty Ins. Co./NY Marine & General/Lloyds/Endurance American Ins. Co. | 37885/16608/N/A/10641
INSURER D: Employers Insurance Company of Wausau | 21458
INSURER E: American Longshore Mutual Assoc., Ltd | N/A
INSURER F: Atlantic Specialty Ins. Co./AGCS/National Union Fire Ins. Co./Zurich American Ins. Co./XL Specialty Insurance Co. | 27154/22837/19445/16535/37885
INSURER G: Great American Ins. Co. | 22136

**INSURED**
Weeks Marine, Inc.
4 Commerce Drive
Cranford, NJ 07016-3598

**COVERAGES** **CERTIFICATE NUMBER:** **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** ☒ COMMERCIAL GENERAL LIABILITY ☐ CLAIMS MADE ☒ OCCUR | ☒ | ☒ | 14/008 | 3/31/14 | 3/31/15 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGES TO RENTED PREMISES (Ea Occurrence) | $ 250,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER ☐ POLICY ☒ PROJECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| B | **AUTOMOBILE LIABILITY** ☒ ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | ☒ | ☒ | ASCZ11261229024 | 3/31/14 | 3/31/15 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | |
| | | | | | | | BODILY INJURY (Per accident) | |
| | | | | | | | PROPERTY DAMAGE (Per accident) | |
| C | ☐ UMBRELLA LIAB ☒ OCCUR ☒ EXCESS LIAB ☐ CLAIMS MADE ☐ DEDUCTIBLE ☐ RETENTION $ | ☒ | ☒ | 14/018 | 3/31/14 | 3/31/15 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ |
| D | **WORKER'S COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? NO (Mandatory in NH) If yes, describe under | | N/A | WCCZ11261229014 | 3/31/14 | 3/31/15 | ☒ WC STATUTORY LIMITS ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| E | USL&H | | | EXCS00109 – 03 | 03/31/14 | 03/31/15 | Limit $2,500,000 | |
| F | Protection & Indemnity/Crew | | | 14/005 | 03/31/14 | 03/31/15 | Limit: $5,000,000 CSL except for crew which limit is $5,000,000 CSL | |
| F | Hull & Machinery | | | 14/005 | 03/31/14 | 03/31/15 | Limit: $5,000,000 | |
| G | Vessel Pollution Liability | | | H3489901-15 | 03/31/14 | 03/31/15 | Limit: $5,000,000 | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES** (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
**Ref: D-9/D-11 Mooring Upgrade, NISMF, Middle Loch, Pearl Harbor, HI (HTBI Job No. 50140909)**
Certificate Holder is included as additional insured as respects to all coverages as their interest may appear with the exception of Worker's Compensation and USL&H and is granted Waiver of Subrogation on all coverages. Coverages shall be Primary and non-contributory basis. P&I includes towers and collision coverage.

**CERTIFICATE HOLDER**
Truston Technologies
520 Ridgely Avenue
Annapolis, MD 21401

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**AUTHORIZED REPRESENTATIVE**

ACORD 25 (2010/05)
© 1988-2010 ACORD CORPORATION. All rights reserved.



ATTACHMENT A

520 Ridgely Avenue
Annapolis, MD 21401
410-571-5186 Fax: 410-510-1095

| MSA Number: | 7165 rev a |
| --- | --- |
| Revision Date: | 9/19/2014 |

**VENDOR DATA:**

| To: | Healy-Tibbitts Builders |
| --- | --- |
| Address: | 99-994 Iwaena Street Suite A |
| | Aiea, Hawaii 96701 |
| POC: | Darin Mingo |
| Phone: | 808-487-3664 |
| Fax: | 808-487-3660 |
| Email: | dmingo@healytibbitts.com |

**CUSTOMER CONTACT DATA:**

| POC: | Kim Bellemore |
| --- | --- |
| Phone: | (401)497-7520 |
| Fax: | (401)223-4849 |
| Email: | kim@truston.us |

| Item | Description | Estimated Qty | Unit Price | Unit Measure | Estimated Total |
| --- | --- | --- | --- | --- | --- |
| | Healy-Tibbitts Builders to supply barge, tug service, work boat, pile driving hammers and survey equipment/surveyor for work installing new mooring at "D-11" and upgrading "D-8"Mooring and Three Additional Legs at NISMF, Middle Loch, Pearl Harbor. Work to occur starting November 3, 2014 and last for approximately 25 to 28 work days. | | | | |
| 1 | Mobilization/Demobilization Weeks 544 to Pearl Harbor Middle Loch, NISMF - includes prearing barge for work and retreving WEEKS 544 mooring system at H-T PH jobsite and return | 1 | $ 30,400.00 | lot | $ 30,400.00 |
| 2 | Mobilize/Demobilize ICE 4450 Vibratory Hammer and Power Pack and Delmag D-36 with Leads or Equivalent - includes prearing hammers, hauling equipment from yard to PH and loading and unloading onto Weeks 544 at PH | 1 | $ 13,430.00 | lot | $ 13,430.00 |
| 3 | WEEKS 544 Crane Rates including 5-Man Crew 8-hour straight time shift M to F | 27 | $ 9,650.00 | day | $ 260,550.00 |
| 4 | WEEKS 544 Crane Rates including 5-Man Crew - OT - 2 Saturdays and additional hours for possible days over 8 hours. | 30 | $ 1,375.00 | hour | $ 41,250.00 |
| 5 | ICE 450 Vibratory Hammer and Power Pack | 5 | $ 850.00 | day | $ 4,250.00 |
| 6 | Delmag D-36 Diesel Hammer and Piledrivng Leads | 5 | $ 850.00 | day | $ 4,250.00 |
| 7 | Tugboat Carolyn including 2-Man Crew (if required) | 80 | $ 460.00 | hour | $ 36,800.00 |
| 8 | Workboat Robert G including 2-Man Crew | 80 | $ 385.00 | hour | $ 30,800.00 |
| 9 | Hypack DGPS Survey System | 15 | $ 400.00 | Day | $ 6,000.00 |
| 10 | Hypack Surveyor | 15 | $ 660.00 | Day | $ 9,900.00 |
| 11 | AWS Welders - 2 - 8 Hour Shift | 3 | $ 1,960.00 | ST-Day | $ 5,880.00 |
| 12 | Steel Work Boat | 29 | $ 200.00 | Day | $ 5,800.00 |
| | (Pricing per e-mail quote dated 7/21/13 and updated labor rates e-mail dated 9/12/2014 ) | | | | |

**Shipping/Delivery Instructions:**

Job Site: Pearl Harbor, Middle Loch

Onsite Operations anticipated to commence in week of November 3.

Coordinate Crane Inspections with Chris Pacheco or Richard Vonderhaar
Cranes & Lifting Equipment compliant to all Navy regulations and P307 compliant.

Terms Net 45  Total: $ 449,310.00

Accepting this Purchase Order by acknowledgement, commencement, delivery or otherwise, the Vendor agrees to the Terms and Conditions on the back of this Purchase Order as well as any instructions and other terms designated as notes or otherwise on the face of this Purchase Order as well as any other attachments. Vendor to invoice Truston within 30 days after materials have been delivered or services rendered  Vendor to provide dailylogs with invoicing

Notes to Vendor: Vendor to invoice Truston within 30 days after materials have been delivered or services rendered.

* Anticipated Start date is 3 November 2014. Required documentation should be submitted to Truston for approval and crane inspection to be coordinated by H-T and Truston.
Primary Onsite Truston POC is Chris Pacheco -(401)855-3690 or Richard Vonderhaar (757)262-9006

All dates and timeframes are estimates. Vendor to confirm actual dates and worksite locations with Truston Technologies. Payment will be based on actual rental durations.

[✓] Equipment & Crane Certs Required

| Truston Technologies, Inc. Authorization: | Vendor Approval and Acknowledgment: |
| --- | --- |
| | Sign and Return to: RICHARD A HELTZEL |
| | Truston Technologies, Inc. PRESIDENT |
| | 520 Ridgely Avenue |
| | Annapolis, MD 21401  Fax: 410-510-1095 |

Job #: OM0925.400